[No. 15317.   Department One.—October 5, 1894.]

HERMANN L. E. MEYER ET AL., RESPONDENTS, *v.* GREAT WESTERN INSURANCE COMPANY, APPELLANT.

APPEAL—REVIEW OF EVIDENCE.—It is not sufficient upon an appeal to point out, or even demonstrate to the appellate court, that the verdict is against the preponderance of evidence, or that upon the same evidence other persons would come to a different conclusion; but if there is any evidence upon which the jury could have found its verdict, or if there is a substantial conflict in the evidence the verdict must be upheld.

MARINE INSURANCE—NECESSITY OF SALE OF CARGO.—In determining the necessity of a sale by a master of a vessel of the cargo covered by marine insurance it is not necessary to demonstrate the impossibility of continuing the voyage with the cargo, or that if it was reshipped it would not sustain injury or create danger, nor is the actual condition of the cargo at the place of sale an absolute test of the necessity of the

sale; but the question to be determined by the jury is whether a prudent man, in the exercise of his deliberate judgment, and upon a reasonable calculation of the future, under the light of the circumstances and facts disclosed by the evidence, would deem it necessary to sell the cargo.

Id.—Barratrous Sale by Master of Vessel—Total Loss.—If a sale of an insured cargo by the master of the vessel is barratrous there is an actual total loss within the meaning of a marine insurance policy.

Id.—Sale in Bad Faith.—If the master acts in bad faith in selling the cargo for the purpose of serving his own ends, or acts against what he knows or believes to be the law, his conduct in selling the cargo is barratrous, though he may think he is advancing the interests of the owners of the cargo in making the sale.

Id.—Barratry in Respect to Cargo by Part Owner of Vessel.—The fact that the master is a part owner in the vessel does not incapacitate him from committing barratry, especially with reference to the cargo.

Id.—Evidence of Barratry.—Evidence that the cost of repairing the vessel was trifling and occupied only a few days, or that the ship was in a seaworthy condition and fit to make the voyage, and that there was no necessity for a sale of the cargo; that much of the cargo was sold before it was discharged, and some of it for a price beyond its cost; that the master, who was himself a part owner in the vessel, failed to notify the insured and the owners of the cargo of the damage or of the sale thereof, and that he abandoned the voyage and sailed for a distant port, is sufficient to authorize a jury to find that the sale was made in bad faith, and that the master was guilty of barratry.

Id.—Evidence—Answer to Telegram.—A letter written by the agents of a board of underwriters, of which the defendant was a member, from the place of sale of the cargo to the board of underwriters, in answer to a telegram sent to the agents at the instance of the defendant, is admissible in evidence against the defendant, and no part thereof can be stricken out as being not responsive to the telegram.

Id.—Report of Agent to Principal—Declaration of Principal.—The statement of facts connected with the disposition of the cargo from the general agents of the board of underwriters, of which the defendant was a member, is to be considered in the light of a report by a general agent to his principal, which is equivalent to a declaration by the principal himself.

Appeal from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Milton Andros*, and *E. W. McGraw*, for Appellant.

The sale of the cargo was not barratrous, as the ship-master was part owner of the vessel and could not com-

mit barratry.  (*Wilson* v. *General M. Ins. Co.*, 12 Cush.
360; 59 Am. Dec. 188; 2 Arnould on Insurance, 837.)
The court erred in admitting in evidence the portion of
the letter of Theobald & Co. to the board of underwriters
objected to, as it contained the mere opinions of the
writers, and was not a part of the *res gestæ*.  (2 Wharton's
Evidence, secs. 1173, 1174, 1178.)    Letters written by
the agent of the insurer to it after the loss cannot
be used as evidence by the insured.  (*Grant* v. *Ætna
Ins. Co.*, 11 Low. Can. Rep. 128.)  The burden of proving
the necessity for a sale was on the plaintiffs.  (*Bryant*
v. *Commonwealth Ins. Co.*, 13 Pick. 551; *The Bonita*,
Lush. 261.)    There must be the clearest proof of the
necessity, which was not produced in this case.  (*The
Fannie and Elmira*, Edw. Adm. 117, 118; 1 Arnould on
Insurance, 191–94; *Gordon* v. *Massachusetts etc. Co.*, 2
Pick. 249; *Hall* v. *Franklin Ins. Co.*, 9 Pick. 466, 471;
*Bryant* v. *Commonwealth Ins. Co.*, 13 Pick. 553, 554;
*Peirce* v. *Ocean Ins. Co.*, 18 Pick. 83, 88; 29 Am. Dec.
567; *Cannan* v. *Meaburn*, 1 Bing. 243; *Gardner* v. *Salva-
dor*, 1 Moody & R. 116.)

*Page & Eells*, and *Pillsbury & Blanding*, for Respond-
ents.

The evidence sustains the verdict that there was
an actual total loss of the subject insured.  (Civ. Code,
sec. 2704; 2 Parsons on Marine Insurance, 74, 106;
*Roux* v. *Salvador*, 3 Bing. N. C. 266; *Hugg* v. *Augusta
Ins. Co.*, 7 How. 595, 606; *Patapsco Ins. Co.* v. *Southgate*,
5 Pet. 620; *Robinson* v. *Commonwealth Ins. Co.*, 3 Sum.
224; *Saunders* v. *Baring*, 34 L. T., N. S., 419; Lowndes
on Marine Insurance, 118, sec. 218; 2 Arnould on
Marine Insurance, 967.)   The plaintiff's loss was an
actual total loss if the sale by the master was barratrous,
and the fact that he owned an interest in the vessel did
not make it any the less barratrous.  (*Jones* v. *Nicholson*,
10 Ex. 28; 2 Arnould on Insurance, 770; 1 Parsons'
Marine Insurance, 571; McArthur on Marine Insurance,
130.)   Whether barratry had been committed or the sale

was fairly and necessarily made was a question for the jury. (*New Orleans Ins. Co.* v. *Albro Co.*, 112 U. S. 506.) The letter from Theobald & Co. was properly admitted in evidence, as they were agents of the board of underwriters of which defendant was a member. (2 Wharton's Evidence, sec. 1117.)

HARRISON, J.—The defendant issued its policy of insurance to the plaintiffs in the sum of nine thousand five hundred dollars against an actual total loss of certain merchandise, consisting of coke, coal, soda-crystals, and soda-ash in the ship *Melanesia* on her voyage from Newcastle-on-Tyne to San Francisco, and also five hundred dollars on commissions and freight profits. The risks against which the insurance was made were the perils of the sea, barratry of the master and mariners, and other perils usually insured against in a policy of marine insurance. The *Melanesia* sailed from Newcastle on the twenty-first day of December, 1884, and on the 21st of June following, in consequence of having sprung a leak, she proceeded to Montevideo, where she was repaired and put in a fit condition to proceed on her voyage, and on the 17th of October, 1885, she sailed from Montevideo for Akyab, in India, where she arrived January 4, 1886. Upon her arrival at Montevideo the master discharged the soda-ash and soda-crystals from the vessel, and sold them at public auction. The coke and coal were sold by him upon the vessel before they were discharged. Other portions of the cargo were sold by him, and the voyage to San Francisco was abandoned. The plaintiffs brought this action, claiming an actual total loss under the provisions of the policy, while the defendant denied that the loss had occurred within any of the risks assumed by it. Upon the issues thus made evidence was presented to the jury, from which they were called upon to determine whether the sale by the master was necessitated by reason of the perils of the sea, or whether he was actuated by improper motives in making the sale. Upon these points the jury were fully

instructed by the court in reference to the law applicable thereto, and to these instructions no exception was taken. The jury rendered a verdict for the plaintiff, and a new trial was asked, upon the ground of insufficiency of the evidence to sustain the verdict and for certain errors of law occurring at the trial. From the judgment and the order denying a new trial the defendant has appealed.

In the statement on motion for a new trial the defendant specifies, as the particulars in which the evidence is insufficient to show that the cargo was lost by reason of any of the perils insured against, that it does not appear that there was any necessity for its sale, or that, if the cargo had been reshipped, it would not have arrived at San Francisco as the article originally shipped, or that it was in such a condition as to make it dangerous for the ship to carry it forward to its place of destination; and also, that the evidence was insufficient to show that the master acted in bad faith or fraudulently, or from any improper motive in making the sale. These specifications are pointed to the instructions of the court, in which the jury were told, in substance, that if, from the evidence, they found these facts the plaintiffs were entitled to recover.

There was evidence before the jury upon all of these matters, and, at the request of the respective parties, the jury were fully instructed by the court upon the propositions of law applicable thereto. They were told the conditions which would create a necessity for the sale, and what would be an actual total loss of the articles insured, within the meaning of the policy; and they were also told that the necessity of the sale was to be determined by them from all the circumstances of the case, as disclosed by the evidence. Their verdict in favor of the plaintiff establishes that they were satisfied from the evidence that there was an actual total loss, within the meaning of the policy, as construed under the instructions of the court, and if there is any evidence in support of the verdict, the verdict

must be upheld. The refusal of the trial court to set it aside is itself of great weight, and shows that in the opinion of the judge who heard the case the evidence was sufficient to uphold it. It is not sufficient thereafter upon an appeal to point out, or even demonstrate, to this court, that the verdict is against the preponderance of evidence, or that upon the same evidence other persons would come to a different conclusion. If there is any evidence upon which the jury could have found its verdict it must be upheld.

It would serve no useful purpose to review the record, and point out the portions which sustain the conclusion of the jury. The intrinsic character of the cargo, its condition upon its arrival at Montevideo, and the extent of injury it had then received, the effect of discharging and reshipping the several portions thereof, the liability to further injury by a prosecution of the voyage, and the probability of risk or danger in attempting to continue the voyage to San Francisco with some portions of the cargo, were all laid before the jury; and they were required to determine whether, upon a fair consideration of all these circumstances, acting as reasonable men would act, there was that necessity for making the sale which the court had told them was necessary in order to bring the loss within the risks assumed by the defendant. It was not necessary to demonstrate with mathematical exactness the impossibility of continuing the voyage with the cargo, or that, if it was reshipped, it would not sustain injury or create danger. Nor was the actual condition of the cargo at Montevideo an absolute test of the necessity of the sale. The question to be determined by the jury was whether a prudent man, in the exercise of his deliberate judgment, and upon a reasonable calculation of the future, under the light of these circumstances and the facts disclosed by this evidence, would deem it necessary to sell the cargo. The consideration of these circumstances as they were presented to the jury created at least a substantial conflict in the evidence upon this

proposition, and we are not at liberty to disregard the conclusion at which they arrived.

The jury were also instructed that, if the sale by the master was barratrous, there was an actual, total loss, within the meaning of the policy; and upon this subject they were told that: "If the master acted in bad faith in selling the cargo of the *Melanesia* for the purpose of serving his own ends, or acted against what he knew, or believed, to be the law, though he thought he was advancing the interests of the owners of the cargo, then his conduct in selling the cargo is what is called barratrous." Upon this point there was evidence to the effect that the cost of repairing the vessel was trifling, and occupied only a few days; that much of the cargo was sold before it was discharged, and before the master had had an opportunity to ascertain the extent of damage to his vessel; that some of it was sold for a price beyond that of its original cost; that the master knew the insured and the owners of the cargo, and failed to communicate with them or notify them of the damage, or of his sale of the cargo, or of his purpose to make the sale; that the master was himself a part owner of the vessel; and that very soon after its repair he abandoned the voyage to San Francisco and sailed for a distant port in India. These facts might well cause the jury to believe that he had acted in bad faith in making the sale; that his interest in the vessel and its earnings prompted him to seek a different field therefor, and caused him to forego his obligation to protect the cargo, for the benefit that he might derive by abandoning the voyage. (See *New Orleans Ins. Co.* v. *Albro Co.*, 112 U. S. 506.) Especially if the jury had believed, as is contended by the appellant upon the proposition previously discussed, that the ship was in a seaworthy condition, and fit to make the voyage to San Francisco, and that there was no necessity for a sale of the cargo, would they be authorized to find that the sale was made in bad faith, and that the master had been guilty of barratry. The fact that the master was a part owner in the vessel did not incapaci-

tate him from committing barratry, especially with reference to the cargo. (*Jones* v. *Nicholson*, 10 Ex. 28.)

Certain rulings of the court are assigned as error, but none of them are such as to authorize a reversal of the judgment. The plaintiff offered in evidence a letter from Theobald & Co., of Montevideo, to the secretary of the San Francisco Board of Underwriters, of which body the defendant was a member, acknowledging the receipt of a telegram regarding the loss of the *Melanesia*. The plaintiff, Meyer, had testified: "I had a conversation with the agent of the defendant with reference to the agents of the board of underwriters at Montevideo, Theobald & Co. He several times told me they were waiting to get an answer from Theobald & Co. about the particulars of the accident to the *Melanesia*, and of the action taken thereupon. . . . . From the conversations I had with the agent of the Great Western Insurance Company, he told me while the risk on the *Melanesia* was pending that the Union Insurance Company was interested as reinsurers of the Great Western, and he had to consult with Mr. Touchard, the then president of the Union Insurance Company, and that they had decided to telegraph to J. K. Theobald & Co. that the ship must continue on her voyage, and they gave me at the time even the terms of the identical cable which they had sent." The defendant objected to a portion of the letter "as being immaterial and irrelevant, and as being the talk of Theobald, giving his opinion on a variety of matters not responsive to any telegram sent to him"; but the objection was overruled. There was no error in this ruling. The portion objected to was not inadmissible, for the reason that it was not responsive to the language of the telegram. It was written by reason of the telegram that had been sent at the instance of the defendant, and was a part of the correspondence by the defendant with reference to the loss. It was relevant to the issues before the court, and might become material upon showing the relations of Theobald & Co. to the defendant. No objection was made to its compe-

tency on the ground that Theobald & Co. were not the agents of the defendant, or that the scope of their agency did not include the disposition of the insured property.    Meyer had referred to them as the agents of the board of underwriters, and it was admitted that the defendant was a member of that board, and the agent of the defendant had stated to him that the telegram had been sent at his instance.    The statement of facts connected with the disposition of the cargo is to be considered in the nature of a report by a general agent to his principal.    Such a report is equivalent to a declaration by the principal himself.    (See Wharton on Evidence, sec. 1177.)    The statements in the letter that the writer considered the sale best for all concerned, and that he considered the prices obtained very good, were, it is true, mere matters of opinion, but they were not specially objected to, and, even if they had been, they are of such a character that no harm could have resulted from their being brought to the knowledge of the jury.    The subsequent letter from Theobald & Co. to the Union Insurance Company was properly excluded.    It was merely a statement to a third party with whom the plaintiffs had no relation.    The other rulings objected to are not of such a nature as to require any comment.    The court committed no error in modifying the instructions asked for by the defendant.

The judgment and order are affirmed.

VAN FLEET, J., and GAROUTTE, J., concurred.