[Civ. No. 1581.    Second Appellate District.—July 3, 1914.]

FREDERICK LUMMER, Sr., Appellant, v. H. A. UNRUH, as Executor of the Will of Elias J. Baldwin, Deceased et al., Respondents.

QUIETING TITLE—ENTRY UPON LAND SUPPOSED TO BE UNAPPROPRIATED—SUBSEQUENT RECOGNITION OF OWNER.—In this action to quiet title the evidence is sufficient to establish that the plaintiff, though he may have entered upon the property in question believing it to be no man's land, subsequently recognized that the defendant's testate was the owner thereof and thereafter occupied the premises in subordination to the rights of the testate, paying him a part of the annual crop as rental, and thereby creating the relation of landlord and tenant.

ID.—RELATION OF LANDLORD AND TENANT—HOW CREATED—PRESUMPTION.—A formal letting is not necessary to create the relation of landlord and tenant. After a person has entered upon land without right, the relation may arise by implication. A presumption in favor of the existence of the relation arises where a person in the possession of land pays rent to one claiming as owner.

25 Cal. App.—7

ID.—ASSESSMENT OF LAND FOR TAXATION—SUFFICIENCY OF DESCRIPTION—EVIDENCE.—If in such case an assessment of the property for purposes of taxation so designated the land that it would afford the owner a means of identification, and would not positively mislead him or would not be calculated to do so, the description is sufficient so that the return of the land for assessment and the payment of taxes thereon by the testate is admissible in evidence.

ID.—DEED—EXCEPTION IN GRANTING CLAUSE—EVIDENCE.—Where a party claims under a deed describing a tract of land, the granting clause of which contains an exception, he must, if he relies upon the deed as establishing his title to land in controversy, show that the land claimed is not within the exception; otherwise the deed is ineffectual for the purposes offered. From the fact that certain lands within the exterior boundaries of the general clause contained in the deed were excepted from the operation thereof, it cannot be said, in the absence of proof, that the land in dispute is not within the exception.

ID.—EXCEPTION IN DEED—FORCE AND EFFECT.—An exception in a grant is said to withdraw from its operation some part or parcel of the thing granted, which, but for the exception, would have passed to the grantee under the general description. The effect in such cases in respect to the thing excepted is as though it had never been included in the deed.

ID.—PRESUMPTION OF GRANT WITHIN PERIOD SHORT OF STATUTE OF LIMITATIONS.—There is no absolute bar against the presumption of a grant, within a period short of the statute of limitations.

ID.—POSSESSION OF LAND—PRESUMPTION OF LAWFUL ORIGIN—EXCEPTIONS IN DEED.—Upon the principle that when the possession and use of real property under a claim of right thereto have been long continued they create a presumption of lawful origin the court is justified, in this case, in indulging the presumption that the tract of land in dispute was not within the exceptions specified in the deeds, and, notwithstanding the failure of the defendants to make direct proof as to the land being without the exception, such fact, in the absence of any evidence to the contrary, will be presumed.

ID.—APPEAL—WEIGHT AND CREDIBILITY OF EVIDENCE—CONCLUSIVENESS OF CONCLUSION OF TRIAL COURT.—Where the evidence is substantially conflicting, it is not the province of this court to weigh the same, or determine whether or not witnesses have sworn falsely. If there is any evidence upon which the court could have made the findings, or a jury could have found a verdict, the action of the trial court must be upheld.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. C. A. Raker, Judge presiding.

The facts are stated in the opinion of the court.

Sidney Dell, and Scarborough & Bowen, for Appellant.

Bradner W. Lee, Force Parker, Gavin McNab, Garret W. McEnerney, and Andrew F. Burke, for Respondents.

SHAW, J.—Action to quiet title to real estate. Judgment went for defendants, from which, and an order denying his motion for a new trial, plaintiff prosecutes this appeal.

Defendant Unruh was sued as executor of the last will and testament of Elias J. Baldwin, deceased, who died March 1, 1909, and defendants Stocker and McClaughry were sued as the residuary legatees under the will of said deceased, all of whom, with the other defendants named, it is alleged, claim some interest, right, or title to the property in dispute.

The land involved, comprising 80.35 acres, is situated in and constitutes a part of the west two-thirds of the San Francisquito Rancho in Los Angeles County. Plaintiff's claim thereto is based solely and alone upon the adverse possession thereof, it being alleged in the complaint filed September 12, 1910, that on or about the twenty-fifth day of November, 1887, at which time the said tract was wild and uncultivated, covered with cactus and other desert growth, he entered into possession thereof, claiming it as his own property, since which time he has been in the open, notorious, exclusive, continuous, peaceable, and adverse possession of the same, claiming title thereto, which, up to the first day of January, 1909, at which time he was in possession, had not been disputed; that by virtue of the premises plaintiff became and was the owner of the legal title to the same on and prior to the first day of January, 1896, and ever since said date has been and now is the owner of said land. The answer of defendants Unruh, Stocker, and McClaughry alleged that at the time of his death, and for many years prior thereto, Elias J. Baldwin was the owner in fee simple of all the lands and property described in plaintiff's complaint and claimed title thereto adversely to plaintiff, and that at the time of the death of said decedent defendants Stocker and McClaughry, as residuary devisees of said decedent became entitled to said property and the whole thereof in fee simple, subject to the administration of the estate of said Baldwin, deceased; and

that plaintiff during all of the time that he occupied said land did so as a tenant of said Baldwin and said Unruh as executor, from whom said plaintiff leased the same from year to year and up to the year ending October 1, 1909, paid a crop rental therefor.

Among other things, the court in substance found that at the time of the commencement of the action, and on January 1, 1909, plaintiff as a tenant, and not otherwise, of said Elias J. Baldwin and the estate of said Elias J. Baldwin, deceased, occupied the tract of land in controversy, but never was in the possession thereof, except as a tenant of said Elias J. Baldwin during his lifetime, and of his estate since his death; that on October 13, 1875, and up to and at the time of his death, said Elias J. Baldwin was the absolute owner, seized in fee simple, in the possession and entitled to the possession of said real property, and from said date up to November 25, 1887, in the actual occupation of said premises; that while in the occupation and possession thereof, plaintiff, on November 25, 1887, with Baldwin's permission and consent, and as the tenant of said Baldwin, and not otherwise, entered into the occupation of said property as a yearly tenant of said Baldwin, which occupation and relation continued up to the time of his death, and thereafter as a tenant of the estate of said Baldwin, deceased; that during said time plaintiff paid yearly rents to said Baldwin for the use and occupation of said real property, except for the year ending October 1, 1909, when he refused to pay rent for that year and for the first time asserted an adverse claim of ownership to said real property; that at no time was plaintiff in possession of the real estate, or any part thereof, other than as a tenant of Elias J. Baldwin; that it is not true that said tract of land was uncultivated at the time the plaintiff entered into the occupation thereof, but small portions of said land were at said time covered with cactus and other growth. These findings are vigorously assailed upon the ground that the evidence is insufficient to support the same.

The evidence offered in behalf of respondents and upon which the findings are based clearly tends to prove that in 1867 one Henry Dalton, by United States patent, acquired the entire Rancho San Francisquito; that on March 8, 1873, Dalton by deed conveyed to Lewis Wolfskill "all the unsold portion of that certain tract of land known as San Francis-

quito Rancho''; that on October 13, 1875, Wolfskill by deed conveyed to Elias J. Baldwin ''the westerly two-thirds portion of the Rancho Francisquito, . . . excepting those portions heretofore sold and conveyed by John O. Wheeler and Henry Dalton, or Dalton and F. L. A. Pioche, or Lewis Wolfskill, the conveyances of which are of record in the county recorder's office in and for said county of Los Angeles.'' The parcel of land involved is an irregular-shaped tract containing 80.35 acres, uninclosed by a fence and conceded to be a part of the westerly two-thirds portion of the San Francisquito Rancho; and it is likewise conceded that from 1875 down to the date of his death Baldwin made return thereof and paid the taxes assessed against the property, though appellant claims the assessment upon which the tax levy was made was void for uncertainty of description. Prior to plaintiff's entry upon the land, November 25, 1887, it was occupied by some Mexicans, who farmed it as tenants of Baldwin. There is no direct evidence that plaintiff's entry in 1887 was under and by virtue of any contractual relations with Baldwin, or his agents, but it does clearly appear from a preponderance of the evidence that, commencing with the year 1887, down to 1908, and every year during said period, plaintiff as to the land in dispute recognized Baldwin as his landlord by annually paying him, through several superintendents and rent collectors, a certain portion of the crop grown thereon, as rental for the use of the property; that at times he sublet portions of it and these subtenants paid to Baldwin a rental for such portion as they farmed. There was also testimony to the effect that plaintiff had stated he was paying rent to Baldwin for the use of the property, and plaintiff admits that Baldwin contributed a considerable sum toward the construction of a well in developing water upon the premises. Evidence was introduced that in 1908 plaintiff failed to pay the rent; whereupon Baldwin served notice upon him to quit and vacate the premises, pursuant to which plaintiff moved a part at least of his effects from the property, when, due to the intercession of a friend, Baldwin consented that plaintiff might continue as tenant in the occupation of twenty acres of the land, and leased the remainder of the tract to other parties made defendants herein. As against this testimony, and other established facts to which we have made no reference, but from which inferences favorable to respondents'

contention are fairly deducible, plaintiff, to some extent corroborated by his wife, testified that he never at any time paid rent to Baldwin, or any other person, for the use of the land in dispute; that in 1890 or 1891 he did lease from Baldwin sixty acres of land adjoining the tract claimed by him, separated by an imaginary line only, which, up to 1908, he farmed and for the use of which he paid Baldwin a yearly crop rental. Appellant, while admitting the fact that plaintiff's testimony upon the vital point, as found by the court, is opposed to that of a half dozen or more witnesses testifying on behalf of defendants, strenuously insists that such testimony should for various and sundry reasons assigned be disregarded by this court. His counsel devote much of the greater part of a voluminous brief to what he terms an analysis of the testimony, in his effort to show why certain witnesses who gave evidence for plaintiff should be credited with telling the truth, while those testifying for defendants should be discredited. No purpose should be subserved by an extended review of the evidence. Suffice it to say that from a careful reading of the entire record we are forced to the conclusion that, while plaintiff may have entered upon the land or a part thereof believing, as he stated, that it was no man's land, he nevertheless, upon learning of his error, commencing with 1887, recognized Baldwin as the owner thereof and that his occupation was in subordination to the rights of Baldwin, and during all of the time down to 1908, at which time Baldwin caused to be served upon him notice to quit and vacate the premises, he annually paid to Baldwin a yearly crop rental for the use of the premises. Where the evidence is substantially conflicting, it is not the province of this court to weigh the same, or determine whether or not witnesses have sworn falsely. If there is any evidence upon which the court could have made the findings, or a jury could have found a verdict, the action of the trial court must be upheld. (*Meyer* v. *Great Western Ins. Co.,* 104 Cal. 387, [38 Pac. 82]; *Clopton* v. *Clopton,* 162 Cal. 27, [121 Pac. 720]; *Carteri* v. *Roberts,* 140 Cal. 164, [73 Pac. 818].)

As stated there was no direct evidence that plaintiff entered upon the land pursuant to the terms of a lease, and it may be conceded that, as testified by him, he squatted thereon, believing it to be government land. A formal letting, however, is not necessary to create the relation of landlord and

tenant. "After a person has entered upon land without right, the relation of landlord and tenant, of course, subsequently arises by implication." (18 Am. & Eng. Ency. of Law, p. 165.) "Where a person in the possession of land pays rent to one claiming as owner, a presumption of the relation of landlord and tenant arises." (24 Cyc., p. 888; *Doe* v. *Jefferson*, 5 Houst. (Del.) 477; *Cressler* v. *Williams*, 80 Ind. 367.) Under the evidence adduced the payment of rent, as found by the court, could not be attributed other than to the fact that plaintiff's occupation was in subordination to the title recognized by him as vested in Baldwin, whose title, under the circumstances, he will not be permitted to deny. (Code Civ. Proc., sec. 1962.) The case is to be distinguished from one where the owner in possession of land accepts a lease thereof from another, in which case his title is unaffected by such act. (*Baldwin* v. *Temple*, 101 Cal. 396, [35 Pac. 1008].)

It is conceded that plaintiff never at any time made return of the property for assessment purposes, or paid any taxes thereon. On the other hand, it is conceded that Baldwin paid the taxes, but appellant insists that the assessment of the property was void for uncertainty of description therein. It appears that in 1869 John Goldsworthy made a survey and map of the westerly two-thirds of the rancho, subdividing it into lots designated thereon by number. While Baldwin had no interest in the property at the time this map was made, it appears that after the execution of the Wolfskill deed in 1875, whereby he claims to have acquired the property therein described, he, on August 3, 1901, filed and had recorded in the county recorder's office a full, true, and correct copy of the Goldsworthy survey and map, on which, among other lots delineated thereon, was a lot numbered 14 containing 80.35 acres, which is shown to be identical with the tract of land claimed by plaintiff. In 1891 to 1896, both inclusive, the assessment described the property as "lot 14 in San Francisquito Rancho, containing 80.35 acres." For the years 1897 to and including 1910, it was, with some slight variation, described as "lot 14, western 2/3 of Rancho San Francisquito, containing 80.35 acres." Prior to the filing of the map, and commencing with 1880, it was described as "lot 14 of Tract Rancho San Francisquito, county of Los Angeles, being subdivided and designated on map made by John Golds-

worthy in January, 1869." It was shown without contradiction that this was the only map on file purporting to be a map of the rancho, and that it had delineated thereon a lot designated as lot 14. It was further conclusively shown that long prior to the filing thereof the Goldsworthy map was a well-known and generally recognized subdivision of the west two-thirds of the rancho, frequently referred to in deeds made by conveyancers as a means of describing lands located in the rancho. Other testimony was to the effect that as described the boundaries of the land could be readily located. Says Mr. Cooley in his work on Taxation: "The designation of the land will be sufficient if it affords the owner a means of identification and does not positively mislead him, or is not calculated to mislead him." To the same effect are the decisions of the supreme court of this state. (See: *Best* v. *Wohlford,* 144 Cal. 736, [78 Pac. 293]; *San Francisco* v. *Pennie,* 93 Cal. 465, [29 Pac. 66]; *San Francisco* v. *Flood,* 64 Cal. 504, [2 Pac. 264].) Leaving out of consideration any question as to whether or not Baldwin, by reason of having made the return, could have been estopped from pleading uncertainty in the description of the assessment in an action to enforce a lien for the taxes, we are clearly of the opinion that the assessment sufficiently described the property, and the objection urged by plaintiff to the admission of the evidence is therefore without merit.

Appellant also insists that the court committed grave and prejudicial errors of law in admitting certain documents in evidence. These documents consisted of, first, a deed from Henry Dalton, who in 1867 by patent acquired the entire rancho from the United States government, which deed was executed March 8, 1873, by Dalton to Lewis Wolfskill, whereby the former conveyed to the latter "all the unsold portion of that certain tract of land known as the San Francisquito Rancho"; second, a deed dated October 13, 1875, executed by Lewis Wolfskill and others whereby they conveyed to Elias J. Baldwin the "westerly two-thirds portion of the Rancho San Francisquito, . . . excepting those portions heretofore sold and conveyed by John O. Wheeler and Henry Dalton, or Dalton and F. L. A. Pioche, or Lewis Wolfskill, the conveyances of which are of record in the county recorder's office in and for said county of Los Angeles." The purpose of this evidence was to show that

title of record to the land in question was vested in Baldwin. Appellant's contention is that, in the absence of evidence showing such fact, the deeds cannot be construed as embracing the land in controversy, and while conceding that that is certain which can be made certain (Civ. Code, sec. 3538), no evidence was offered touching the question as to whether or not the lands in dispute had at the time of the execution of the Dalton deed been sold, nor whether they were included in the conveyance referred to in the Wolfskill deed. Since by introducing these deeds defendants sought to establish the fact that Baldwin was the record owner of the property, they must be deemed to have assumed the burden of showing that the tract of land was not within the exceptions therein contained. The deeds did not purport to convey the entire tract of land the boundaries of which were specified therein, but excepted from the operation thereof such portions as had been sold and conveyed. True it may be that no sales had been made at the time of the execution of the Dalton deed, and likewise true that no conveyance of any of the lands had been made by the parties designated which were of record at the time of the execution of the Wolfskill deed; nevertheless, by reason of the language employed, a presumption arises that sales and conveyances had been made, and it was therefore incumbent upon defendants to either overcome such presumption by showing that no sales and conveyances had been made of lands within the exterior boundaries described, or, if sales and conveyances thereof had been made to prove that the tract of land in controversy was not included therein. No evidence, however, was offered touching these questions. We conceive the law to be that where a party claims under a deed describing a tract of land, the granting clause of which contains an exception, he must, if he relies upon such deed as establishing his title to land in controversy, show that the land claimed is not within the exception; otherwise the deed is ineffectual for the purposes offered. From the fact that certain lands, within the exterior boundaries of the general clause contained in the deed were excepted from the operation thereof, it cannot be said, in the absence of proof, that the land in dispute is not within the exception. That such is the well settled law, is supported by ample authority. (See: *Harman* v. *Stearns,* 95 Va. 58, [27 S. E. 601] ; *Logan* v. *Ward,* 58 W. Va. 366, [5 L. R. A.

(N. S.) 156, 52 S. E. 398] ; *Maxwell Land Grant Co.* v. *Dawson,* 151 U. S. 586, [38 L. Ed. 279, 14 Sup. Ct. Rep. 458] ; *Hawkins* v. *Barney,* 5 Pet. 457, [8 L. Ed. 190] ; *Reusens* v. *Lawson,* 91 Va. 226, [21 S. E. 347] ; *Corinne Mill, Canal & S. Co.* v. *Johnson,* 156 U. S. 574, [39 L. Ed. 537, 15 Sup. Ct. Rep. 409].) In the case of *Maxwell Land Grant Co* v. *Dawson,* 151 U. S. 586, [38 L. Ed. 279, 14 Sup. Ct. Rep. 458], it is said "An exception in a grant is said to withdraw from its operation some part or parcel of the thing granted, which, but for the exception, would have passed to the grantee under the general description. The effect in such cases in respect to the thing excepted is as though it had never been included in the deed." The deeds in themselves and standing alone were insufficient to show a record title vested in Baldwin.

If, however, we are correct in holding that during the period extending from 1887 down to 1908 Baldwin, claiming to be the owner, was in possession of the land through plaintiff as his tenant, paying all taxes levied thereon, then it may be assumed that he acquired a title by prescription. Hence, the fact that the deeds on their face were insufficient to constitute a paper title would be immaterial, since in no event could plaintiff have been prejudiced by defendants' failure to prove a record title. Moreover, as stated, the evidence clearly tends to establish the fact that, until plaintiff in 1909 asserted his adverse claim thereto, Baldwin had for a period of thirty-three years been in the undisturbed possession of the land, exercising all the rights of ownership therein without challenge or question from any sources, during all of which time he had, as stated, paid all taxes levied thereon. Under these circumstances, if necessary to sustain the judgment, the law will presume the land was not within the exceptions made in the deeds. The failure of any person during this long period of time to make claim of ownership based upon a sale made by Dalton prior to his conveyance to Wolfskill, and like failure of any one claiming under a conveyance executed by Wolfskill prior to his conveyance to Baldwin, was a strong circumstance indicating that no such sales or conveyances had been made of the tract here involved. (*Herndon* v. *Burnett,* 21 Tex. Civ. App. 25, [50 S. W. 581] ; *Cahill* v. *Cahill,* 75 Conn. 522, [60 L. R. A. 706, 54 Atl. 201, 732].) While it is unusual to invoke such presumption,

since the statute of limitations generally constitutes a sufficient defense, nevertheless, if the circumstances of the case justify it, such presumption will be indulged regardless of whether or not the statute has run. "There is no absolute bar against the presumption of a grant, within a period short of the statute of limitations." (*Ricard* v. *Williams,* 20 U. S., (7 Wheat.) 59, [5 L. Ed. 398].) Therefore, upon the principle that when the possession and use of real property under a claim of right thereto have been long continued they create a presumption of lawful origin (*Fletcher* v. *Fuller,* 120 U. S. 534, [30 L. Ed. 759, 7 Sup. Ct. Rep. 667] ; *Attorney-General* v. *Horner,* 2 Ch. Div. (C. A.) 140), the court is justified in indulging the presumption that the tract of land in dispute was not within exceptions specified in the deeds, and, notwithstanding the failure of defendants to make direct proof as to the land being without the exception, such fact, in the absence of any evidence to the contrary, will be presumed.

In discussing the case we have throughout the opinion assumed that the tract of land in controversy consisted of said lot 14, comprising 80.35 acres. It appears that at the close of the evidence plaintiff amended his complaint by adding to the description of land therein contained as claimed by him, another tract the boundaries of which were conceded to be identical with lot 13 delineated upon the Goldsworthy map, and it was stipulated that all of the evidence applicable to the case as alleged in the original complaint should be deemed to apply to the case as amended. Hence, whatever is said with reference to lot 14, comprising 80.35 acres, is likewise applicable to the land as described in the amended complaint.

We find no prejudicial error in the record. The judgment and order denying plaintiff's motion for a new trial are, therefore, affirmed.

Conrey, P. J., and James, J., concurred.