[Civ. No. 4754. First Appellate District, Division Two.—August 28, 1924.]

M. GREEN, Appellant, v. DE LOS PALMER, Respondent.

[1] EQUITY—STATUTORY ENACTMENT.—A rule of equity, as well as one of law, may be changed by statutory enactment.

[2] TAXATION—VOID SALE—QUIETING TITLE—PAYMENT OF TAXES BY FORMER OWNER.—The effect of the amendment in 1913 of section 3898 of the Political Code, to provide that whenever it shall be determined in any action that the tax sale and conveyance provided for in that and certain other sections of said code "are void for any reason," and that the purchaser from the state may not be finally awarded the property purchased, no decree shall be given declaring a forfeiture of the property until the former owner, or other party in interest, "shall have repaid to the purchaser the full amount of taxes, penalties and costs," is that the former owner is not entitled to affirmative relief against the purchaser at a tax sale until he reimburses the purchaser for the taxes which were justly chargeable against the property;

---

2. Reimbursement of taxes paid by purchaser, as condition of equitable relief against invalid tax sale, notes, 12 Ann. Cas. 230; L. R. A. 1915C, 492. See, also, 26 R. C. L. 439.

and it is immaterial that the invalidity of the tax title was because the assessment of the property, and not merely the sale by the tax collector, was void.

[3] Id. — Void Assessment — Invalid Sale — Remedies of Former Owner.—In an action by the purchaser at a tax sale to quiet title to the property purchased, where the tax title is invalid because the assessment of the property was void, the former owner may stand upon his legal rights and defend his title without tendering payment of any tax; but where he asks for affirmative relief quieting his title without offering to pay any of the taxes justly chargeable against the property, a judgment granting him such relief is erroneous.

[4] Id.—Tax Descriptions—Reference to Intersecting Streets—Common Knowledge.—It is a matter of common knowledge that descriptions upon the assessment-roll are necessarily brief and that it is a recognized practice to use the point of intersection of delineated streets as a point for the beginning of a call, and that when a piece of property is noted as lying a certain number of feet from the line of an intersecting street the point of beginning is fixed from the point of intersection of the nearest lines of the two streets mentioned.

[5] Id.—Description of City Lots—Reference to Streets.—Although, under sections 3903 and 3904 of the Political Code, where the words "north" and "northerly" are used without any qualification the course of true north is intended, in view of the common knowledge that in cities and towns lots are described and sold with reference to public streets as delineated upon recorded maps, that the frontage of these lots conforms with the street lines, and that the street lines are uniformly used in descriptions for assessment purposes, the line of the street as delineated upon the map to which reference is made in the description controls over the call of the course.

[6] Id.—Inaccurate Courses — Uncertain Descriptions. — Where a city lot is described as fronting upon a certain street line as appearing upon a designated map which is of record, there is no insurmountable uncertainty in the description because it calls for courses of north, east, south, and west, when the street line itself varies from the true lines of the compass.

[7] Id.—Indefinite Description—Parol Evidence.—Where the description which appears upon the assessment-roll is merely indefinite, and not a false description, but is not so indefinite that the true description cannot be readily obtained by reference to

3. Reimbursement of purchaser of invalid tax title as condition precedent to action to quiet title, note, 16 Ann. Cas. 803.

4. See 26 R. C. L. 357.

the assessor's block-book, or by an inspection of the property upon the ground, such description may be explained by evidence at the trial and then becomes sufficient to answer all the requirements of the law.

[8] ID. — INCORRECT MAP REFERENCE — SURPLUSAGE. — Where the description which appears upon the assessment-roll describes the city lot in question as being part of a certain numbered block, and it is shown without conflict that there is but one block bearing that number in the city, the erroneous reference in said description to a certain map is surplusage and cannot affect the description, particularly where such reference could not mislead the owner.

---

(1) 36 Cyc., p. 941. (2) 37 Cyc., p. 1375. (3) 37 Cyc., p. 1378 (Anno.). (4) 23 C. J., p. 94, sec. 1885; 37 Cyc., p. 1053. (5) 37 Cyc., p. 1053. (6) 37 Cyc., p. 1053. (7) 37 Cyc., p. 1054. (8) 37 Cyc., p. 1055.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Reversed.

The facts are stated in the opinion of the court.

E. H. Wakeman and Robert L. Levy for Appellant.

Marcus D. Wolff for Respondent.

NOURSE, J.—The plaintiff commenced an action to quiet title to a certain lot of land which he had acquired by purchase from the tax collector of Alameda County at a sale, for delinquent taxes. The complaint was in the ordinary form to quiet title to the property. Issue was joined by defendant's second amended answer which merely denied plaintiff's claim of interest in the property and alleged that the defendant was the owner thereof. The answer also contained a description of the property in suit somewhat different from that which appeared in the complaint. Trial was had upon the issues so joined and at its termination the court announced that judgment would be entered in favor of the defendant and requested him to prepare findings. This was done and in response thereto the plaintiff suggested amendments to the proposed findings in which, among other things, it was suggested that if judgment was to be entered in favor of the defendant it should be done only on the

condition that he reimburse the plaintiff for the outlays
which he had made as required by subdivision 5 of section
3898 of the Political Code. This relief was denied the plain-
tiff and judgment was thereupon entered upon findings pre-
pared by the trial court declaring the defendant to be the
owner of the property and that the plaintiff had no title or
interest therein, and quieting the title of the defendant
thereto without requiring him to reimburse the plaintiff for
the taxes and expenses paid by him in pursuit of the state's
title. From this judgment the plaintiff has appealed under
the provisions of section 953a of the Code of Civil Procedure.

The appellant urges that the trial court was in error in
finding and adjudging that he had no title to the property
because of a defective description in the assessment proceed-
ings and that the court was also in error in adjudging that
the appellant was not entitled to be reimbursed for his out-
lays in pursuit of the state title. We shall consider the last
point first.

Subdivision 5 of section 3898 of the Political Code pro-
vides that, ''Whenever in any action at law, it has been or
·shall be determined by a court that the sale and conveyance
provided for in this and the preceding section or in section
three thousand seven hundred seventy-one of this code here-
tofore or hereafter made *are void for any reason,* and that
the purchaser from the state may not be finally awarded the
property so purchased, *no decree* of the court shall be given
*declaring a forfeiture of the property* until the former owner,
or other party in interest, shall have repaid to the pur-
chaser the full amount of taxes, penalties and costs paid
out and expended by him, . . . in pursuit of the state's title
to the property so sold.'' (Emphasis ours.)

The only point urged by respondent in support of this
phase of the appeal is that because the assessment of the
property was void, and not merely the sale by the tax col-
lector, section 3898 does not apply. It will be noted, how-
ever, that the legislature has declared that this right of the
purchaser from the state shall apply to all cases where the
sale and conveyance ''are void for any reason.'' There are
many cases where the sale and conveyance are declared void
because of some defect in the original assessment. If it had
been the intention of the legislature to except these cases

from the provisions of the code section it would have been a simple matter to have inserted some language indicating that intention.

We are referred to *Coleman* v. *County of Los Angeles,* 180 Cal. 714 [182 Pac. 440], which the respondent states holds that when the assessment of property is void the plaintiff is not entitled to any refund by the defendant. We do not find that to be the rule of that case. The supreme court was discussing the effect of the amendment to section 3898 which we have heretofore quoted and which was adopted in 1913. Reference was made in the opinion to the rule of equity as announced in *Holland* v. *Hotchkiss,* 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258], that where the owner proceeded against a purchaser at a tax sale equity would require him to reimburse the purchaser if the tax sale was held void, and the court said that it was also held that where the assessment itself was void, as well as the sale, no payment would be required of the owner as a condition precedent to the quieting of his title. This statement referred to the portion of the Holland opinion which quoted from volume 2, page 1455 of Cooley on Taxation. "If the tax were wholly illegal in its essentials, of course no such requirement could be made, for it would not be supported by any equity." **[1]** There is no quarrel with the rule of equity as thus announced in the earlier decisions, but, of course, a rule of equity, as well as one of law, may be changed by statutory enactment. It was said in the Coleman case (p. 720), "It is obvious that the amount thus bid (at the tax sale) would be increased if the purchaser could be assured that if this deed was void he would at least recover the money paid by him. No doubt the amendment in question was adopted to assure the purchaser such reimbursement." And again, at page 721, "It will be observed, then, that in every instance the purchaser, in whatever form of proceeding the relative rights of the purchaser and the property owners may be litigated, is entitled to be reimbursed by the property owner 'the full amount of taxes, penalties and costs paid out and expended by him, to be determined by the court, in pursuit of the state's title to the property so sold.'" In the later case of *State of California* v. *Royal Consolidated Min. Co.,* 187 Cal. 343, 346 [202 Pac. 133, 134],

the supreme court said: "It is well settled that such relief will be denied to a property owner notwithstanding errors in the sale or in the assessment, if it can be ascertained from the assessment that the property owner is liable in justice and good morals to pay a tax thereon which has not been paid. (*Savings & Loan Society* v. *Burke,* 151 Cal. 616 [91 Pac. 504].)" In *Savings & Loan Society* v. *Burke, supra,* the attack was based solely on the ground that the assessment of the tax was void in the beginning and the court held on the authority of *Couts* v. *Cornell,* 147 Cal. 560 [82 Pac. 194], that assuming the assessment to be void, equity would not extend relief to the owner of the property unless he offered to do equity by paying the tax which was justly charged against him. In the Couts case the attack was based upon the ground that the assessment was void because the property was not sufficiently described and there the court held that such defect in the description did not affect the moral obligation of the owner to pay the tax.

[2] In view of these authorities the effect of the amendment is that the owner is not entitled to affirmative relief against the purchaser at a tax sale until he reimburses him for the taxes which were justly chargeable against the property. This does not necessarily deprive the owner of all remedies against the state for a void tax; it merely denies him the process of the state courts to work an inequity against one who has become a purchaser on the invitation of the state.

[3] In the case before us the respondent might have chosen to "stand upon his legal rights and defend his title without tendering payment of any tax." (*Moyer* v. *Wilson,* 166 Cal. 261 [135 Pac. 1125].) But he did not choose to do so. He asked for affirmative relief quieting his title without offering to pay any of the taxes justly chargeable against the property over a period of some six or seven years, and the judgment granted him that relief. In this respect the judgment was erroneous and it must therefore be reversed.

The only other point requiring consideration is that the description in the assessment which was carried into appellant's deed from the tax collector was so indefinite and uncertain as to render the entire proceedings void. The

property in suit was described in appellant's complaint substantially as it appears upon the assessment-roll, while the answer makes certain additions to the description which respondent contends are necessary to give a clear and legal description of the property. This point is really the vital issue between the parties because if the property was sufficiently described in the assessment proceedings the appellant is entitled to a decree quieting his title thereto.

The description found in the assessment is as follows: "Map of Hougham Tract, map filed of record in the office of the Recorder of Alameda County pce of ld beg at a pt on the W line of Peralta St 296 50/100 ft n from 18th St. Th N 135 ft by 224 ft deep W—Portion of Block 741—569." It was stipulated that the abbreviations used in this description were all authorized by the state board of equalization in accordance with section 3884 of the Political Code and explanations thereof were given at the top of the page of the assessment-roll upon which the description of the land appeared.

We quote the description appearing in the complaint showing in parentheses the alterations made in the answer and which the respondent insists are necessary to give a sufficient description of the property: "Commencing at a point on the westerly line of Peralta Street distant thereon 296.50 feet northerly from the (intersection of said westerly line of said Peralta Street with the) northerly line of 18th Street (as said Peralta Street and said 18th Street now exist) running thence northerly along said (westerly) line of Peralta Street 135 feet, thence at right angles westerly (and parallel with said northerly line of 18th Street) 224 feet, thence at right angles southerly (and parallel with said westerly line of Peralta Street), 135 feet, thence at right angles easterly (and parallel with said northerly line of 18th Street) 224 feet to the point of commencement, being a portion of (Block Number 741 as the same is delineated and so designated on the map entitled 'Map of Oakland and Vicinity') being a portion of the Hougham Tract as the same is laid down and delineated on the map of said Hougham Tract," etc.

It is the contention of respondent that the description appearing upon the assessment-roll is insufficient because it

does not give a definite point of beginning for the call and because the true lines of the property vary some degrees from the true points of the compass. At the time of the trial the appellant endeavored to explain these matters by evidence drawn from the officials in the assessor's and recorder's office and showed that the property in suit was clearly delineated upon the assessor's block-book, a public record to which free access could be had by anyone interested in ascertaining the true description of the property. It is argued by the respondent that inasmuch as the point of beginning is definitely fixed in the westerly line of Peralta at a certain distance northerly from Eighteenth Street, it is necessary to choose a point on Eighteenth Street east of the easterly line of Peralta Street so that this point of beginning in the westerly line of Peralta Street may be true north from the point so chosen. By doing this he described a lot of land with its southeasterly point alone touching the westerly line of Peralta Street. He then described a parallelogram running at an angle of about forty degrees off of the line of the street and insists that this must be the property described in the assessment. We do not believe that it is necessary in matters of this kind to argue from the point of the utmost absurdity, but even if we were to assume that anyone could have been misled by this description to the point of believing that his property was as described by respondent we would find that a portion at least of the property in suit was covered by this description and a mere reference to the assessor's block-book, or to the map of the Hougham tract, would have enabled the investigator to have determined the true description.

[4] It is a matter of common knowledge that these descriptions upon the assessment-roll are necessarily brief and that it is a recognized practice to use the point of intersection of delineated streets as a point for the beginning of a call, and that when a piece of property is noted as lying a certain number of feet from the line of an intersecting street the point of beginning is fixed from the point of intersection of the nearest lines of the two streets mentioned. Following this general practice in looking at the description upon the assessment-roll we would first find the point of intersection of the northerly line of Eighteenth Street

with the westerly line of Peralta Street. We would then go 296.50 feet in a northerly direction along the westerly line of Peralta Street because we are informed that the point of commencement is in the westerly line of that street. It is of course true that where the words ''north'' and ''northerly'' are used without any qualification the course of true north is intended. [5] (Secs. 3903 and 3904, Pol. Code.) In view of the common knowledge that in cities and towns, lots are described and sold with reference to public streets as delineated upon recorded maps, and in view of the common knowledge that the frontage of these lots conforms with the street lines, and that the street lines are uniformly used in descriptions for assessment purposes, the line of the street as delineated upon the map to which reference is made in the description controls over the call of the course. [6] Thus where a lot is described as fronting upon a certain street line as appearing upon a designated map which is of record, there is no insurmountable uncertainty in the description because it calls for courses of north, east, south, and west, when the street line itself varies from the true lines of the compass. [7] The description which appeared upon the assessment-roll was not therefore a false description, it was merely indefinite. It was not, however, so indefinite that the true description could not have been readily obtained by reference to the assessor's block-book, or by an inspection of the property upon the ground. It has been repeatedly held that when such is the case the description may be explained by evidence at the trial and then becomes sufficient to answer all the requirements of the law. (*Campbell* v. *Shafer,* 162 Cal. 206, 212 [121 Pac. 737]; *Furrey* v. *Lautz,* 162 Cal. 397, 400 [122 Pac. 1073]; *Fitzsimmons* v. *Atherton,* 162 Cal. 630, 632 [124 Pac. 250].) In *Lummer* v. *Unruh,* 25 Cal. App. 104 [142 Pac. 914], the court quoted with approval the following statement of Mr. Cooley in his work on Taxation: ''The designation of the land will be sufficient if it affords the owner a means of identification and does not positively mislead him or is not calculated to mislead him.''

[8] In addition to the objections to the calls in the description, it is said that it was wholly misleading because it described the property as being a portion of the Hougham

68 Cal. App.—26

Tract, whereas in truth it is a portion of the "Oakland and Vicinity Tract." The argument is based upon a misconception of the record. The assessor did not describe the property as being a *portion* of the Hougham Tract, he merely referred to the map of the Hougham Tract upon which the property was delineated. This map was received in evidence and it appears therefrom that the property in dispute is shown thereon but that a dotted line runs diagonally across the northwesterly portion of block 741. This line was explained to be the southern boundary of the Hougham Tract property, but the fact is, nevertheless, that all of block 741 is delineated upon the map of the Hougham Tract to which the assessor referred. Inasmuch as it was shown without conflict that there was but one block numbered 741 in the city of Oakland, the reference to the map was surplusage and cannot affect the description, particularly where, as said by Mr. Cooley in the quotation made above, the designation could not mislead the owner.

On the retrial of the case counsel may find it essential to make more definite proof in explanation of the description which is under attack. We refer to this because a reading of the record before us discloses that he was seriously handicapped by the constant interruptions and objections made during the course of the trial which we feel in some measure prevented him from making an orderly presentation of his proof.

Judgment reversed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 27, 1924.

All the Justices concurred.