[S. F. No. 11010. In Bank.—June 1, 1926.]

## HAROLD JACOBY, Respondent, v. SAMUEL WOLFF, Appellant.

[1] TAXATION—ASSESSMENTS—DESCRIPTION—MEMORANDUM ON ASSESSMENT-ROLL.—An arbitrary memorandum placed upon an assessment-roll by the assessor or anyone else will not operate to invalidate the assessment; and where the assessor places on the assessment-roll an arbitrary number for his own convenience in locating the property, the property being otherwise described on

the assessment-roll by block and lot numbers shown on a recorded map, the arbitrary number does not render the description of the property defective and misleading.

[2] ID.—FALSE DESCRIPTION—MISLEADING OWNER—TEST.—The test to which every false call occurring in the course of tax proceedings is to be subjected is whether it probably had the effect to mislead the land owner in relation to the land assessed, advertised, and sold.

[3] ID.—DESCRIPTION IN ASSESSMENT—ORAL EVIDENCE TO EXPLAIN —ADMISSIBILITY OF.—Where an assessment contained an arbitrary number placed there by the assessor for his own convenience in locating the property, the property being otherwise sufficiently described by block and lot numbers, oral evidence was admissible to show that the number was no part of the description and was placed there by the assessor for his convenience, pursuant to a system in his office.

[4] ID.—PUBLICATION OF DELINQUENT LIST—PROPERTY INCLUDED IN.— Section 3764 of the Political Code is not to be construed as authorizing the tax collector to include in the delinquent tax list, published pursuant to the provisions of section 3764 of the Political Code, only such property as has been sold to the state five years previous to the publication of said list; and where land was sold to the state for taxes on June 26, 1917, its inclusion in the delinquent list published on June 2, 1922, was not premature and did not deprive the owner of said property of the full time allowed by law for redemption, and a sale thereof to a private party on June 29, 1922, was not void.

[5] ID.—CONSTRUCTION OF CODE SECTIONS.—The provisions of sections 3764, 3771, and 3785b of the Political Code must be considered and construed together as a correlated whole rather than as separate and distinct enactments.

[6] ID.—ADVERTISING PROPERTY FOR SALE — REDEMPTION. — The advertising of a delinquent taxpayer's property for sale prior to the expiration of the five-year statutory period for redemption does not operate to toll the period of redemption, nor is the advertising of such property at such a time prohibited by statute; and the right of redemption given by statute has no bearing upon the time when the property is to be advertised for sale; nor is the property owner injured because of the advertising of the property for sale prior to the expiration of the full five years provided for redemption.

[7] ID. — MAILING COPY OF DELINQUENT LIST — DUTY OF TAX COLLECTOR.—The inquiry of the tax collector in endeavoring to ascertain the postoffice address of a delinquent property owner need

2. See 24 Cal. Jur. 192; 26 R. C. L. 357.
4. See 24 Cal. Jur. 273.

not extend beyond an examination of the assessment-roll during the period from the date of the delinquent assessment to the time of the assessment last made before the sale, and if the address appears thereon he must mail the notice to it, but if it does not appear thereon no mailing of notice is required.

[8] ID.—ABSENCE OF ADDRESS—PRESUMPTIONS.—If no address of the delinquent taxpayer is given on the assessment-roll, in the absence of evidence to the contrary, it must be assumed, in accordance with the presumption of law that official duty has been regularly performed, that the address of the person assessed was not known to the assessing officer.

[9] ID. — DEED TO PURCHASER — AUTHORITY OF TAX COLLECTOR — If a sale is made to a purchaser under section 3771 of the Political Code, there is no provision made for a deed to the state, but the tax collector is directed to convey the property directly to the purchaser under section 3785b of the Political Code, which section governs and controls the transfer of a delinquent owner's property sold to a purchaser at a delinquent tax sale, other than the state.

[10] ID.—NOTICE OF SALE—IMMATERIAL ERROR IN.—A notice of tax sale is not void because it states that the delinquent taxpayer will have five years, and thereafter, "until the entry *of* sale of said land by the state," instead of "until the entry *or* sale of said land by the state."

[11] ID.—EVIDENCE—TAX DEED.—In an action to quiet title to real property where the defendant bases his claim to the property upon a tax sale to him, the tax deed from the state is admissible in support of his chain of title and is not open to the objection that it is not admissible as *prima facie* proof of the fact that a copy of the notice of sale was mailed to the person to whom the property was last assessed.

[12] ID.—EXCESS PENALTY—VALIDITY OF SALE.—It is the rule that a tax sale will not be invalidated because an excess penalty was added, where the excess is less than the smallest fractional coin authorized by law.

(1) 37 Cyc., p. 1479, n. 88.    (2) 37 Cyc., p. 1051, n. 1.    (3) 3 C. J., p. 808, n. 91; 4 C. J., p. 970, n. 57.    (4) 37 Cyc., n. 1, p. 1298, n. 14.    (5) 36 Cyc., p. 1128, n. 54.    (6) 37 Cyc., p. 1331, n. 51.    (7) 37 Cyc., p. 1325, n. 17.    (8) 37 Cyc., p. 1325, n. 17. (9) 37 Cyc., p. 1422, n. 93.    (10) 37 Cyc., p. 1327, n. 30.    (11) 37 Cyc., p. 1463, n. 72.    (12) 37 Cyc., p. 1479, n. 88.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Reversed.

9. See 24 Cal. Jur. 345.
11. See 24 Cal. Jur. 376; 26 R. C. L. 424.

The facts are stated in the opinion of the court.

Marcus D. Wolff and A. Walter Allen for Appellant.

Harold Jacoby and Milton Shepardson for Respondent.

J. L. Smith, Robert Mack Light, Benjamin Kirby, Herbert D. Wise and Burton Jackson Wyman, *Amici Curiae*, in Support of Respondent.

LENNON, J.—Upon a rehearing and reconsideration of this case, we are satisfied with the opinion originally rendered and, therefore, adopt the same as follows:

"In this action to quiet title to a lot of land in the City of Oakland, plaintiff claimed title to said lot of land as the record owner thereof. Defendant claimed title to the same lot of land under a tax deed from the state. Plaintiff's complaint was drafted in the form ordinarily employed in actions of this character. The answer of the defendant, while admitting the plaintiff's claim of title in fee simple to the land in suit, denied that the plaintiff ever was the owner of said land. In addition to his answer the defendant interposed a cross-complaint wherein he alleged that his claim of title to said land was founded upon a tax deed from the State of California executed to him by the tax collector of Alameda county, pursuant to a sale, at public auction, to the defendant, for the non-payment of state and county taxes assessed against said land which were then due, owing and delinquent. All of the allegations of the cross-complaint by stipulation of counsel for the respective parties were deemed denied.

"The plaintiff rested his case upon proof of the fact that the record title to the land in suit stood in his name. The defendant in response to the general issue, and the issues raised by the cross-complaint and answer thereto, offered and there was received in evidence a tax deed from the state, conveying the property in suit to him, and supplemented this with proof of the several and various proceedings which culminated in the execution of that deed.

"The trial of the case centered upon the issues relative to the sufficiency of the things done prior to the execution and delivery of the tax deed to the defendant. Upon the issues

as made a judgment for the plaintiff was rendered and entered based upon general findings to the effect that the plaintiff was at all of the times mentioned in the complaint the owner in fee of the land in suit, and that the defendant did not at any time own said land or have any interest therein. The findings of the trial court evidently proceeded upon the theory that the proceedings leading up to the tax sale and which culminated in the tax deed from the state to the defendant were irregular to the point of invalidity and that, as a consequence, the record title of the plaintiff to the land in suit should prevail.

"The facts of the case as revealed by the record before us are these: In the year 1916 a tax was levied on the land in suit. Joseph Levigne was the then owner of the land and it was assessed to him. Subsequent thereto, on June 26, 1917, the said tax having become ·delinquent, a sale of said land was made to the state for the non-payment of said tax. Thereafter, on June 2, 1922, pursuant to Section 3764, Political Code, the tax collector published for the first time a notice that the five-year period allowed by law for the redemption of said property sold to the state for delinquent taxes would expire on the 27th day of June, 1922. Said property remaining unredeemed and the sale thereof to the state being uncanceled at the expiration of said redemption period, the lot of land was sold to defendant Wolff on June 29th, 1922, pursuant to the provisions of Section 3771 of the Political Code. Subsequent thereto, on July 12, 1922, a deed was executed and delivered to defendant by the tax collector of Alameda County on behalf of· the state pursuant to Section 3785b of the Political Code.

"Respondent contends, among other things, that the assessment in question is void because the description of the property as it appears on the assessment roll is defective to the point of being misleading. The description complained of appears on the assessment book in the following form, words and figures:

| Taxpayer's Name and post office Address | School District | Description of Property in Oakland City. | Lot | Block |
|---|---|---|---|---|
| Joseph I. Lavigne | Oakland Formerly Lockwood | Havenscourt. Map filed of record in the office of the Recorder of Alameda County | 23 | 35 ——— 3276 |

"Upon this phase of the case we are in substantial accord
with the reasoning and conclusion reached by Mr. Justice
Sturtevant of the District Court of Appeal, in an opinion
rendered by him when the case was heard and determined by
that court in the first instance wherein he says:

" 'Turning to the map which was introduced in evidence
we find at the top: "Sheet No. 1. Havenscourt, Oakland,
California." The addition of the expression, "Sheet No.
1," is no more than though it were marked simply "1" as
indicating a page. There is no material variance, therefore,
between the map introduced in evidence and the map
designated in the purported assessment.

" 'Commencing to examine the map, one finds that it has
on its face a delineation of blocks 15-35 inclusive. One also
finds that each block has delineated on it various lots of
various sizes. One also finds that block 35 is subdivided
into lots 1-52 inclusive. One also finds that there is no
3276 lot, block or otherwise, and that said numeral does not
in any place appear on the face of said map.

" 'During the trial of the case the defendant called as a
witness H. F. Platts. Volume 45 of the assessment roll for
the year 1916 having been identified and page 192 having
been introduced in evidence, the examination of the witness
proceeded. In reply to questions propounded by the plain-
tiff's attorney, or the defendant's attorney, or the court, the
witness testified: "I am familiar with the method of assess-
ment proceedings in the city of Oakland and I was familiar
with the methods employed during the year 1916. There
are blocks in the city of Oakland that have the number
corresponding to No. 3276. This property has. There are
some blocks in the city of Oakland that have this 3276 as
an arbitrary number used by the assessor to locate the prop-
erty. Not every block in the city of Oakland has an arbi-
trary number. Lots 1 to 100, and 1 to 112 have no other
number. All the rest have. The numbers do not run con-
secutively. Some numbers appear in different places in the
county. Some numbers will appear twice in the city of
Oakland. Talking about the city of Oakland the annexed
district might be 3276, I think there might be a 3212.
That will appear again in the Claremont district. Within
the city limits of the city of Oakland I think there are
some. In using the number that I refer to which I used on

my direct examination it is simply an arbitrary number that is used by the assessor's office for its own convenience exclusively. As the exigencies of the case require it some of the arbitrary numbers are changed. It may be changed in one district this year and be an entirely different district next year. The supervisors of this county have never adopted a system of numbering for assessment purposes so far as I know. In the assessment of property in the city of Oakland we have to deal with properties which are indicated on recorded maps. By giving arbitrary numbers to the blocks in different sections the assessor has adopted a system for locating the assessment of this property other than by reference to the map by lot and block indicated thereon. The practice was to subdivide the assessments that they might be easily platted on our books and block number given for each page so that if a new tract was opened that tract was subdivided in lots that might create new blocks say 3276 to 3300, meaning that naturally we would cut out that block and make these other numbers later on as the subdivision came along. We were also supposed to fill them up as fast as we could. Then there is supposed to be duplicate numbers too. This same number 3276 might appear in our books in a different year in another section of the county. We try to have the numbers follow along for a few years but the rule possibly is to change them in the district not quite so far out as Havenscourt. We had arbitrary numbers but they had to be changed in 1915 and 1916 by virtue of the assessor's authority. An arbitrary method to expedite the work. One deputy assessing in the Piedmont district will have to change certain numbers up there although the numbers are reported given to the office, and another man may be operating in Emeryville, each has his section, they work simultaneously to get the assessment roll up. The number 3276 has been the uniform number applied to the particular property under controversy and has not been changed since 1916.''

[1]  '' 'Looking back over the testimony given by Mr. Platts, it is patent that the number 3276 was no part of the assessment, that it was a memorandum for the convenience of the assessor; that the memorandum could have been in any other column, for instance in the column headed ''remarks'' and would have had the same force and effect. It further ap-

198 Cal.—43

pears that the memorandum might have been in the form of arbitrary letters instead of arbitrary numerals. No authority has been cited, and we know of none, which is to the effect that an arbitrary memorandum placed on the assessment roll by the assessor or anyone else will operate to invalidate the assessment. . . .

"'A similar question was before the court in the leading case *Bosworth* v. *Danzien,* 25 Cal. 296. The lot involved in that case was situated at the corner of Center and Guerrero streets in San Francisco The assessment contained a description, "Lot commencing on the northeasterly corner of Center and Guerrero streets, thence easterly on Corbett street, 200 feet, thence at right angles northerly" etc. The court calls attention to the fact that tax proceedings are *in invitum.* The land owner intends nothing. Regarding the rules which should be applied, at page 299, the court said: "The maxim *'Ut res magis valeat quam pereat,'* [that the thing may prevail, rather than be destroyed], is a canon, with reference to which not only contracts and wills are to be construed, but statutes also—passed, as they are, without any direct cooperation or assent on the part of the citizen. The spirit of the maxim is that nothing should be destroyed merely for the sake of destruction. We have not, by our own examination, been able to find any adjudged case in which it has been held that a false call in an assessment roll, advertisement or tax deed, necessarily vitiates a tax title. The rule as given in *Tallman* v. *White,* 2 N. Y. 66, is as follows: 'An assessment of land is fatally defective and void, if it contain such a falsity in the designation or description of the parcel assessed, as might probably mislead the owner and prevent him from ascertaining by the notices that his land was to be sold or redeemed. Such mistake or falsity defeats one of the obvious and just purposes of the statute,—that of giving to the owner an opportunity of preventing the sale by paying the tax.' We accept the above decision, not more on the authority of the Court by which it was pronounced, than on our entire conviction that it is correct in principle.

[2] "" '" "The test, then, to which every false call occurring in the course of tax proceedings is to be subjected, is this: Has it probably had the effect to mislead the landowner in relation to the land assessed, advertised and sold?

" ' "In the case at bar, the description in the assessment roll begins at a point fixed with entire precision, and runs therefrom due east two hundred feet. The superadded description of that line—'along Corbett street'—was not, in our judgment, calculated to mislead the landowner, and for the manifest reason that it was impossible that the call should be true. The call was not only false, but absurd, and that, too, in the light of facts appearing on the face of the general description of the corner and line."

" 'In the case of *Best* v. *Wohlford*, 144 Cal. 733 [78 Pac. 293], the land in controversy was "Lot 4 in Block 178 of a subdivision of the Rancho Rincon del Diablo, containing 14.42 acres of land more or less, according to the official map thereof on file in the office of the county recorder of San Diego County, California." The defendant claimed under a tax deed describing the land as "land lying and being within said Escondido Irrigation District, County of San Diego, State of California, described as follows; to wit: Lot 4, block 178, 14.42 acres Rancho Rincon del Diablo." In connection with the offer of the deed the defendant thereupon offered evidence to prove that there is, and was at the time of said assessment under which the deed was made, but one lot 4 in block 178 in the Rancho Rincon del Diablo and that such fact is and was at the time of said assessment well known. Under objection the trial court sustained an objection to the tax deed and the offered evidence. The Supreme Court held that the evidence was relevant and competent and should have been admitted and reversed the case.

" '*Lummer* v. *Unruh*, 25 Cal. App. 97 [142 Pac. 914], was an action to quiet title. The plaintiff claimed title by adverse possession. The defendant attempted to show that he had paid the taxes. The plaintiff claimed that the assessments did not describe the property and were void. The lands were surveyed and platted in 1869 by Goldsworthy. The map was not filed of record until 1901. No one of the assessments referred to a map. On the trial of the case the defendant introduced evidence to the effect that the Goldsworthy map was the only map on file which purported to be a map of the rancho; that long before the map was filed it was a well-known subdivision of the rancho; and that the assessments as worded described the boundaries so that the lands could be readily located. The court held that the ob-

jections of the plaintiff to the admission of the evidence referred to were without merit and affirmed the judgment of the trial court.

" 'In the case of *Fitzimons* v. *Atherton,* 162 Cal. 630 [124 Pac. 250], it was held that a description of property in a tax deed as "lying and being in the County of Kern, State of California, and described as follows, towit: E. ½ of block 2, Kelly's Addition to Delano," may be explained and rendered certain by the introduction in evidence of the recorded map of Kelly's Addition to Delano and that there was no other recorded map of the addition.

" 'In the case of *Reclamation Dist. No. 673* v. *Diepenbrock,* 168 Cal. 577 [143 Pac. 763], the court was considering an assessment made for reclamation purposes. The description contained in the assessment described the land by naming the adjacent owners. On the trial of the case the trial court received oral evidence. The north boundary as set forth in the original description contained the designation of one more adjacent tract than the amended call and the east boundary one less, while three tracts were added to the description to make the western boundary complete. The court held that the oral testimony was properly received and that the description was sufficient.

" 'To know whether the property was assessed the owner, purchaser, or other person must look at the assessment roll. In looking at the assessment roll such person would find an arbitrary memorandum on nearly every single assessment. If he wanted further information as to the lot or block the assessment contained reference to the map of Havenscourt. An examination of that map discloses no block 35/3276 and no block numbered 3276, but does disclose a block number 35. In the language of the cases just cited it cannot be said as a matter of law that the description contained on the face of the assessment roll was in a form to positively mislead such person, or was calculated to mislead him. He may not therefore complain.'

[3] "Some contention is made that the trial court erroneously received in evidence parol proof to vary the description set forth in the deed and assessment roll when it permitted the witness Platts to testify that the numerals '3276' which appeared upon the assessment were not part of the description of the property and were placed there as

a mere arbitrary number to be used by the assessor to locate the property in accord with a system in vogue in the assessor's office.    The record, however, discloses no objection to this particular piece of testimony and the record does show that when counsel for the plaintiff objected to the introduction of the tax deed in evidence upon the ground that it recited a misdescription of the property conveyed, in that it contained, in addition to a correct designation of the block in which the land was situated, the numerals '3276,' he specifically requested permission of the court to call 'Mr. Platts, deputy county assessor' to supplement that objection 'by proof from Mr. Platts . . . that there is no block $\frac{35}{3276}$ shown on the map which has been introduced in evidence—the map of Havenscourt.'    Counsel for the defendant, so the record shows, ultimately acquiesced in that request and thereupon placed Platts on the stand as a witness for the defendant practically for the same purpose desired by counsel for the plaintiff, who proceeded to testify, without the semblance of an objection, as previously indicated.    In view of this condition of the record counsel for the plaintiff is in no position to complain of the reception of the evidence referred to.    Moreover, the entry of the numerals '3276' beneath the numerals '35,' which latter correctly designated the block in which the land in suit was situated, did not operate, in and of themselves, to cloud the true description of the property to such an extent that it could not have been readily obtained by a reference to the remaining description of the property as it appeared upon the assessment roll and which, apart from the numerals '3276,' correctly described the property.    'It has been repeatedly held that when such is the case the description may be explained by evidence at the trial and then becomes sufficient to answer all the requirements of the law.    (*Campbell* v. *Shafer,* 162 Cal. 206, 212 [121 Pac. 737] ; *Furrey* v. *Lautz,* 162 Cal. 397, 400 [122 Pac. 1073] ; *Fitzimons* v. *Atherton,* 162 Cal. 630, 632 [124 Pac. 250].)    In *Lummer* v. *Unruh,* 25 Cal. App. 104 [142 Pac. 914], the court quoted with approval the following statement of Mr. Cooley in his work on Taxation: " 'The designation of the land will be sufficient if it affords the owner a means of identification and does not positively mislead him or is not calculated to mislead him.' " (*Green* v. *Palmer,* 68 Cal. App. 393 [229 Pac. 876].)

"Respondent advances the additional theory that the description on the assessment roll is void because the property cannot be identified without reference to two maps; that the assessment calls for one map, while the block reference is taken from another map. In this respect it is urged that the block reference is taken from a private unofficial map of the assessor, while the assessment calls for an official map on file in the recorder's office, and that without both maps the property cannot be identified. The description of the property in suit on the assessment book refers to only one map, viz.: 'Havenscourt.' There was a map of 'Havenscourt' on file in the recorder's office and upon this map there is a lot 23 and a block 35. This, it seems to us, in view of what has been said in reference to the description of the land, was a sufficient reference to the recorded map and clearly identifies the said land.

[4] "It is claimed by respondent that the tax collector was authorized to include in the delinquent list, published pursuant to the provisions of section 3764 of the Political Code, only such property as had been sold to the state five years previous to the publication of said list. The land in controversy had been sold to the state on June 26, 1917, and it was included in the delinquent list published on June 2, 1922. Said property, however, was not sold to the defendant until June 29, 1922. This alleged premature inclusion of the property in the delinquent list, respondent argues, deprived the owner of said property of the full time allowed by law for the redemption of property sold to the state for delinquent taxes and, therefore, the subsequent sale of said property to defendant was void. Section 3764 of the Political Code, when closely considered, does not lend itself to such a construction.

[5] "A perusal of the provisions of sections 3764, 3771 and 3785b of the Political Code makes manifest that they must be considered and construed together as a correlated whole rather than as separate and distinct enactments. These sections comprise a complete plan for the sale of property for the nonpayment of taxes.

"Section 3764 of the Political Code, as it existed in 1917, makes provision for the preparation and publication of the delinquent tax list; when it is to be made, what it is to determine, and then specially provides with reference to property

previously sold to the state: ' . . . That before publication of said list the tax collector and auditor shall jointly arrange said list in such manner that said publication shall designate in some particular manner the property contained in said list which was sold to the state five years previous under the provisions of section three thousand seven hundred and seventy-one of this code, on which the taxes remain unpaid, *or which property has not been redeemed or the sale thereof canceled, and which property* the state would otherwise be entitled to a deed thereof after the lapse of five years from said previous sale.' (Italics added.)

"Section 3771 of the Political Code, as it stood in 1917, in part provided 'that any property contained in the advertised list as provided for in section 3764 of this code, which has not been redeemed from the sale made to the state five years previously shall be sold by the tax collector at public auction . . . '

"These code sections do not in terms, nor by necessary inference, limit the listing of the property proffered for sale only to such property as may have been sold to the state five years previous to the date of the publication of the delinquent list. On the contrary, the provisions of these code sections pertinent to the point presented here, indicate that the legislature intended, rather, to provide for the publication of a delinquent list which should include therein property upon which taxes had become delinquent and which would be sold at public auction, or to which a deed of said property was made by the state after the full five year period of redemption had elapsed. Obviously the primary purpose of the publication of this list was to give notice to defaulting taxpayers and prospective purchasers of (1) what property remained unredeemed, or the sale of which to the state remained uncanceled; and (2) what property would be sold, for which a deed thereto could be given to the state.

"It is to be noted in this behalf that, pursuant to the provisions of section 3764 of the Political Code, the delinquent list 'shall designate in some particular manner' two classes of property on which taxes remain unpaid, namely: (1) Such property as has been sold to the state five years previous to the publication of the delinquent list under section 3771 of the Political Code; and (2) such property as 'has not been redeemed or the sale thereof canceled, and

which property the state would otherwise be entitled to a deed thereof after the lapse of five years from said previous sale.' Reading section 3764 of the Political Code in the light of this purpose, it seems obvious that the legislature intended that the delinquent list should include not only such property as had been sold to the state five years prior to the publication of said list but, in addition thereto, all other property to which the state would be entitled to a deed thereof after the expiration of five years from the previous sale made to the state. The sale last referred to is that made five years prior to the sale advertised in the delinquent list and not five years prior to the publication of said list. Furthermore, a consideration of the phrase 'after the lapse of five years from said previous sale,' in conjunction with the context of the code sections immediately under consideration, fortifies this construction. This phrase connotes a present or a future sale from which a sale made five years previous thereto can be counted and considered. The legislature doubtless was referring to the sale advertised in the delinquent list rather than to the date of the publication of the delinquent list. The inclusion in the delinquent list of property which would be sold by the state on a date five years from the original sale to the state, although the delinquent list was published prior to the expiration of the full five year period permitted for redemption, is, we think, authorized by the provisions of section 3764 and the provisions of the several correlated sections of the Political Code which deal with the sale of property for the nonpayment of taxes.

[6] "The advertising of a delinquent taxpayer's property for sale prior to the expiration of the five year statutory period for redemption does not operate to toll the period of redemption, nor is the advertising of such property at such a time prohibited by statute. The right of redemption given by statute has no bearing upon the time when the property is to be advertised for sale. It is patent that the respondent was not injured because of the advertising of the property for sale prior to the expiration of the full five years provided for redemption. The land in suit was not actually sold until three days subsequent to the expiration of that period. Moreover, it may be said that the construction contended for by respondent would operate as a

decided discrimination in favor of those delinquent taxpayers whose statutory period of redemption would expire on the days between the date of publication of the delinquent list and the date of the sale as advertised.

"Respondent contends that compliance with the provisions of section 3771 of the Political Code, as it stood in 1917, appertaining to the mailing of a copy of the published notice of sales was not shown. In this behalf it is argued that it was incumbent on appellant, who was relying on the tax deed, to make proof of the mailing of said notice in order to establish an essential link in the chain of tax proceedings through which he was claiming title, and that under the rule announced in the case of *Smith* v. *Furlong,* 160 Cal. 522 [117 Pac. 527], the mailing of such notice was a jurisdictional prerequisite to the making of a valid tax deed by the tax collector.

[7] "The rule of law relative to the necessity of mailing a copy of the published delinquent list, as enunciated in *Smith* v. *Furlong, supra,* has been limited by the case of *Kehlet* v. *Bergman,* 162 Cal. 217 [121 Pac. 918], to cases where the last known post office address of the landowner was upon the assessment roll from the date of the delinquent assessment down to the time of the assessment last made before the sale. The inquiry of the tax collector in endeavoring to ascertain the post office address of the delinquent property owner need not extend beyond an examination of the assessment roll during the period mentioned. 'All the tax collector has to do as to mailing notice is to look at the assessment roll and ascertain to whom the property about to be sold was last assessed, and whether the address of the party appears thereon. If it does, he must mail a notice. If it does not, no mailing of notice is required. He is not bound to look beyond or outside the assessment roll to ascertain the address of a party when the assessment roll does not furnish it.' Citing *Kehlet* v. *Bergman, supra.* (*Healton* v. *Morrison,* 162 Cal. 668, 673 [124 Pac. 240].) It was an admitted fact in the case that the postoffice address of the land owner did not appear on the assessment books for the years 1916, 1917, 1918, 1919, 1920, 1921 and 1922. [8] The record is silent as to whether or not the post office address of said land owner was actually known to the tax collector, and, as was said in *Campbell* v. *Shafer,* 162 Cal. 206, 213

[121 Pac. 737, 740]: 'If no address is given on any assessment, in the absence of evidence to the contrary it must be assumed, in accordance with the presumption of law that official duty has been regularly performed (sec. 1963, subd. 15, Code Civ. Proc.), that the address of the person assessed was not known to the assessing officer. The mere fact that such person had in fact resided at a certain place . . . would not be sufficient to overcome the force of this presumption.'

[9] "Respondent urges that the state could not execute a deed to the lot in controversy because no deed had ever been made to the state, as provided by section 3785 of the Political Code. It is respondent's theory in connection with this phase of the case that execution and delivery of the deed to the state was an advertised condition of the notice of sale, and without compliance therewith the state cannot make a deed to a purchaser. In answer to this contention it may be said that the legislature provided two methods of selling and transferring real property for the non-payment of taxes subsequent to the expiration of the period of redemption. One method, the method which governs and controls the instant case, is provided for in sections 3764, 3771 and 3785b of the Political Code. Section 3785b of the Political Code provides for the deed to be executed and delivered by the tax collector to the purchaser. Section 3771 of the Political Code provides that only in case the delinquent owner's property 'if not so redeemed, or if no sale is had,' under the provisions of the fourth proviso thereof, to a purchaser, then the property shall be deeded to the state as provided in section 3785 of the Political Code. If, however, a sale is made to a purchaser under section 3771 of the Political Code, there is no provision made for a deed to the state, but the tax collector is directed to convey the property by deed directly to the purchaser under section 3785b of the Political Code, which section governs and controls the transfer of a delinquent owner's property sold to a purchaser at a delinquent tax sale, 'other than the state of California.' (Italics added.) Thus, it is evident, a conveyance is permitted to be made to the purchaser of the property without the formality of making a deed to the state in the first instance.

"The sale in the case at bar was not made or had pursuant to sections 3897 and 3898 of the Political Code. These sec-

tions relate to and deal with the sale of delinquent property after a deed thereof has been made to the state and a subsequent sale made to a purchaser, and have no application to the sale of the property in the instant case. The authorities cited, construing these sections, likewise have no bearing on the question presented in the instant case. No authorities are cited by respondent where it is held that a sale to a purchaser under sections 3771 and 3785b of the Political Code is invalid unless the property has been first deeded to the state.

"That the legislature had the power to provide for such a method of selling and transferring property to purchasers at delinquent tax sale as is provided by sections 3771 and 3785b of the Political Code we have no doubt. The tax collector has been designated as the agent of the state to perform the required duty of executing and delivering the required deed. The plan is simple and direct and creates no legal anomaly. If the tax collector can by deed transfer a good title to the state, the state has a right to determine the method by which the tax collector may deed the property to a purchaser, and make his act of corresponding legal force and effect as if the transfer were first made to the state.

[10] "Respondent claims that the notice of sale was void because of an alleged defect in its form. In this behalf it is argued that section 3780 of the Political Code provides that the redemption of property sold to the state for delinquent taxes may be made within five years from the date of sale to the state ' . . . or at any time prior to the entry or sale of said land by the state . . . ' and that the notice as published by the tax collector stated that the delinquent taxpayer would have five years, and thereafter, 'until the entry *of* sale of said land by the state.' This slight discrepancy between the notice as published and the wording of the statute cannot be held to invalidate the sale of the land in suit. This notice of sale was published by the tax collector under section 3771 of the Political Code. This code section provides for the notice of sale to be published but does not prescribe the form of the notice. Section 3780 of the Political Code does not refer to nor does it attempt to prescribe the form or kind of notice to be given by the tax collector; it merely provides for the time within which redemption of property may be made by the delinquent taxpayer. The

precise form of the notice of sale is immaterial so long as it is in substantial compliance with the section and with reasonable certainty conveys notice of the intended sale.

[11] "It is urged that the tax deed from the state to the defendant was not admissible as *prima facie* proof of the fact that a copy of the notice of the sale was mailed to the person to whom the property was last assessed. The answer to this contention is to be found in the fact, as shown by the record, that the deed in question was offered in evidence, as a pertinent and permissible piece of proof in support of the defendant's chain of title. It was not offered in evidence for any other purpose and that being so, of course, no objection was made or could have been rightfully made upon the ground stated."

[12] The point is made for the first time, upon a rehearing of the case, that in computing the penalties an extra cent was added to the penalties due on the second installment. This contention is evidently based upon the fact that the assessor, when making the assessment, added on a half cent. The point is not well taken, we think, nor is it worthy of serious consideration. The excess demanded appears to be less than one cent and it appears to be the rule that a sale will not be invalidated where "the excess is less than the smallest fractional coin authorized by law." (*Treadwell* v. *Patterson,* 51 Cal. 637.)

It not appearing from the record before us that there was any invalidity, as a matter of law, in the tax proceedings leading up to the deed from the state to the defendant, it follows that judgment should have been entered in favor of the defendant on the issues raised by his cross-complaint and the answer thereto.

The judgment is reversed.

Curtis, J., Richards, J., Seawell, J., and Waste, C. J., concurred.