[Civ. No. 6495. First Appellate District, Division Two.—February 13, 1929.]

PAUL SCHAINMAN, Respondent, v. ALL PERSONS, etc., et al., Appellants.

SOPHIE SCHAINMAN, Respondent, v. JAMES HUNTER et al., Appellants.

Frederick Appelman for Appellants.

Clarence A. Linn for Respondents.

NOURSE, J.—These two actions to quiet title to the same piece of real property situated in the city and county of San Francisco were tried jointly by stipulation and the appeals in both are presented on a single typewritten record. The trial court gave judgment for the plaintiff in each case. Plaintiff claimed title under a tax deed issued to Paul Schainman on June 30, 1921, following a sale for nonpayment of taxes for the year 1915, and it is stipulated that the defendants are entitled to judgment unless their title has been divested by this deed. The main issues raised in these cases were considered in *Morton* v. *Sloan, ante,* p. 747 [275 Pac. 223], but as they have been presented in a different way it will be necessary to treat them separately.

Primarily the attack is made upon the assessment of the tax for the year 1915, the claim being that the property was insufficiently described. On the assessment-roll the property was described as: "Lot 41, Block No. 3756." At the top of each page of the assessment-roll appeared the notation that the property was described "by lot and block number as delineated on the assessment map of the city and

county of San Francisco, State of California, adopted by the board of supervisors, November 29, 1913. Said assessment map is on file in the office of the assessor, tax collector, recorder and auditor.'' Ordinance No. 2511 (New Series), enacted by the board of supervisors of the city and county on November 29, 1913, was received in evidence. After reciting that it was enacted pursuant to subdivision 3 of section 3650 of the Political Code for the purpose of providing a uniform system of writing the real estate assessment-rolls, it authorized the assessor and the city engineer ''to prepare and formulate a system of assessing the lots and blocks of land . . . by lot number and block number. They are hereby authorized to make and compile a map or maps, indexes, and map books. . . . The assessor is hereby authorized and directed . . . to write the real estate assessment-rolls describing each parcel of land by lot and block number, or tract number, as delineated on said map and block book. . . . A copy of said block books shall be filed in the office of the assessor, tax collector, auditor and recorder.''

Acting under authority of this ordinance such a map was prepared showing each block in the city and county numbered from 1 to 7068. Upon the same authority block books were prepared showing the subdivision of each block into lots with the number, description, and owner of each. These block books consisted of twenty-eight volumes. Each volume consisted of separate pages depicting each block according to the number appearing on the large map, the pages being fastened securely together and bound in a substantial binding. The large map was used by all the public offices as an index map for the purpose of locating the block by number. The block books were so arranged that this block number served as an index to the page of the block book upon which the map of the particular block appeared.

One of these block books was received in evidence indorsed ''Volume 23, Blocks 3747 to 4030, records of the Recorder's office, 1915,'' and evidence was received that the other volumes were similarly indorsed and, if put together in their relative positions, they would make a complete picture of the map of the entire city and county. Evidence was also received that there was but one block numbered 3756 in the city and county, and but one lot numbered 41 therein. The plaintiffs rely upon this block book as the

"assessment map" according to which the land was assessed and sold for nonpayment of taxes, whereas, in the case of *Morton* v. *Sloan,* the parties relied upon the so-called index map.

The appellants here, though relying upon different evidence, raise the same questions of law—that the description is indefinite because the map referred to was not properly filed. ■ As we said in the other case, it was not necessary to refer to any map; the property could be assessed by lot and block number "according to the system of numbering" in the particular city. (Subd. 2, sec. 3650, Pol. Code.) It is not disputed that the system of numbering lots and blocks in the city and county of San Francisco is that which has been pictured above. This system was authorized by the board of supervisors; it has been in use in the city and county for many years; it has been impliedly approved by the supervisors through their use of the block books while sitting as a board of equalization; and it has become a matter of common knowledge that the block books constitute the assessment maps in use by all the public offices in matters of taxation of real estate.

If, therefore, there was any uncertainty in the description of the property in suit it could be readily cleared by reference to the proper block book. It seems to be the position of appellants that the block book was not a map because it was called a block book, and that the reference in the assessment must, therefore, have been to the index map which did not show the subdivisions of the block. But the evidence is that for all purposes of taxation of real property the block books are treated as the maps covering the entire city and we see no difficulty in the fact that these appear on separate pages of a bound volume rather than on a single sheet of paper. However, the evidence at the trial clearly identified the property and disclosed that there was no uncertainty in the description and this is sufficient to answer all the requirements of the law. (*Green* v. *Palmer,* 68 Cal. App. 393, 401 [229 Pac. 876]; *Jacoby* v. *Wolff,* 198 Cal. 667, 677 [247 Pac. 195].)

■ But, aside from this, the index map and the various block book maps were valid official maps duly filed in the public offices mentioned in the assessment proceedings. They were prepared under the direction of the ordinance,

deposited in these offices, and used by these officials, and the public as official maps. ■ "A paper is filed when delivered to the proper officer; and indorsing it with the time of filing is not a part of the filing." (*Smith* v. *Biscailuz,* 83 Cal. 344, 358 [21 Pac. 15, 18]; *Edwards* v. *Grand,* 121 Cal. 254, 256 [53 Pac. 796].) ■ Appellants' attack on these documents is on the ground that they do not bear any filing stamp by the officer with whom they were deposited. If this were necessary, the failure to so indorse them was cured by the act of 1917 (Stats. 1917, p. 1653) and three later acts of similar purport. The 1917 act provided that "Any map or plat recorded or filed with the county recorder . . . shall *for all purposes* be deemed to have been properly so recorded or filed and to comply with all the requirements of the laws in force at the time it was so recorded or filed." ■ We are satisfied that the reference in the assessment proceedings to the assessment map "included the large index map (in evidence in the case of *Morton* v. *Sloan,* and used on this appeal by stipulation) and the block books in evidence here, and that these all constitute one system or set of maps. We are also satisfied, in view of these validating acts, that these maps were properly filed in the public offices referred to in the assessment proceedings. In reaching this conclusion we have not overlooked the act of 1907 (Stats. 1907, p. 290), which relates to the sale of private property by reference to a map of a private subdivision, or the provisions of section 3658a of the Political Code covering the preparation and recording of an official map. ■ The first act is a penal statute not applicable to the state in tax proceedings. The code section provides that when a map is prepared and recorded as called for in the section, it shall be available "for all purposes of this section." ■ The law does not require the filing or recording of any map for assessment purposes, and the proceedings here under review do not come within the purview of section 3658a.

■ The attack is made upon the publication of the delinquent tax list in that the name of the owner was printed as Ellen Sissions, whereas the true name of the owner was Ellen Sessions. The answer is found in sections 3807 and 3628 of the Political Code which provide that no mistake in the name of the owner of real property shall render the

assessment invalid. (*Hanson* v. *Goldsmith*, 170 Cal. 512, 517 [150 Pac. 364].)

 Complaint is made that in computing the penalty on the amount of taxes due the auditor fixed the sum of $4.06, whereas the exact amount of the penalty was $4.0565. The point is wholly without merit. (*Bell* v. *Fee Title Co.*, 69 Cal. App. 437, 443 [231 Pac. 598]; *Jacoby* v. *Wolff*, 198 Cal. 667, 684 [247 Pac. 195].)

 It is argued that the tax deed is void on its face because it contained the recital that the delinquency was for taxes assessed "in the year 1915–16," and the further recital that "all taxes levied and assessed against said prop-erty prior to the year 1920" had been paid. It is claimed that the first recital is indefinite and that the second is insufficient because the sale was made in 1921 and the deed should therefore have recited that taxes for the year 1920 were also paid. During the trial a corrected deed containing true recitals in accord with the undisputed facts was received in evidence. This disposes of the point as we have held in *Morton* v. *Sloan, supra.*

The judgments are affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 15, 1929, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied. The appellants complain because we did not in the opinion heretofore filed rule on the question as to the validity of the original tax deed. They now state that at the time of the trial they stipulated that the matter of an accounting for rents, issues, and profits of the property in suit could be heard at any time after judgment of the trial court or after the filing of the *remittitur* following the judgment on appeal, and that it is necessary for that purpose to have an adjudication of the validity of that deed.

Our opinion followed the opinion in *Morton* v. *Sloan, ante,* p. 747 [275 Pac. 223], which was filed on the same day as the opinion herein, and we assumed that it was sufficient to refer to the discussion of the validity of the original tax

deed in the Morton opinion as the facts were practically identical. As pointed out in the Morton opinion, the taxation statutes do not specifically require a recital in the tax deed that all taxes levied and assessed to the date of purchase have been paid. These statutes do require that such taxes must be paid, and as the fact of payment is conceded in this case there can be no question but that the original tax deed was sufficient to pass title and that the error in the recitals made by the tax collector was one which could be corrected at any time to make the recitals conform to the facts. If the stipulation relating to an accounting depends upon the original tax deed being void then no accounting need be had because such deed was sufficient to pass title to the respondent as of its date.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 11, 1929.