[Civ. No. 5884.   Third Appellate District.—January 18, 1938.]

ADELE DUCEY, Respondent, v. C. A. DAMBACHER, as County Auditor, etc., Appellant.

C. H. Grayson, District Attorney, for Appellant.

Rowan Hardin for Respondent.

PULLEN, P. J.—Plaintiff is the owner of a tract of land in the county of Tuolumne. The assessment rolls of that county show delinquent and unpaid taxes against this land for the years 1893, 1896 and 1897. Noted on the assessment rolls against this property is ''Sold to the State''. No proceedings have ever been taken to sell this property at public auction, and no deed has ever passed from the state to a purchaser. The property has been continuously assessed to the owner, and all taxes so assessed have been marked paid prior to 1931, except taxes for the years 1893, 1896 and 1897.

After 1931 the taxes became delinquent for the years 1931, 1932, 1933, 1934 and 1935. In 1935 plaintiff offered to pay the delinquencies for the years subsequent to 1931 but appellant, as auditor of the county of Tuolumne, refused to accept this tender for these delinquent taxes unless plaintiff would also pay the delinquencies for 1893, 1896 and 1897, together with all costs and penalties.

A writ of mandate was then sought to compel the auditor to accept the tender, and to issue a certificate of redemption clearing the property of all the delinquent taxes. After a hearing the trial court issued the writ, whereupon this appeal was taken.

The question here involved is determined by a solution of section 3716 of the Political Code as amended in 1931, reading in part as follows:

'' . . . ; the judgment is not satisfied nor the lien removed until the taxes are paid on the property sold for the payment thereof;

''Provided, that effective one year from the time this act takes effect, the lien of every tax . . . shall cease to exist for all purposes after thirty years from the time said tax became a lien;

''Limitation. And provided further that effective one year from the time this act takes effect, every tax, . . . shall be conclusively presumed to have been paid after thirty years from the time the same became a lien, unless the property subject thereto has been sold in the manner provided by law for the payment of said tax.''

Section 3771 of the Political Code provided that if, upon a specified day and hour, the taxes, penalties and costs assessed against the particular property had not been fully paid, then by operation of law and the declaration of the tax collector, the same shall be sold to the state and the tax collector shall make an entry opposite each parcel, "Sold to the State".

Appellant contends that where the assessment roll bears the stamp "Sold to the State", this transaction by operation of law constitutes the sale referred to in section 3716 of the Political Code. The trial judge held that in order that there be such a sale the state must completely dispose of the property by public auction. With this interpretation we are in accord.

The sale by operation of law to the state as provided for in section 3771 is, in our opinion, not the sale contemplated in section 3716 of the Political Code. The sale to the state (sec. 3771, Pol. Code) is not *a sale provided by law for the payment of the tax* but is merely a book transaction to facilitate the adjustment of accounts between the tax collector and the auditor.

That the sale to the state was not intended to be treated as such sale as referred to in section 3716 of the Political Code is apparent from the argument sent to the voters of California prior to the general election of 1932, explaining a proposed constitutional amendment, now embodied in the Constitution, and known as section 31b of article IV, the purpose of which was to ratify a statute of limitations on taxes. This argument reads in part as follows:

"The 1931 legislature passed a bill which would have the effect of placing a statute of limitation on taxes. Conflicting legal opinion made it desirable to pass Assembly Constitutional Amendment Number Two, which if approved by the electorate of the State will make constitutional the 1931 act, or permit the legislature to pass a constitutional act in 1933.

"During the early history of the state, when land was held in large parcels and taxes were small, the levying and collection of taxes was carried on in many counties in a careless and haphazard manner. Old tax rolls show taxes as unpaid which were in fact paid, receipts have been found among old private papers showing this to be the case.

"The law passed by the legislature in effect simply provides that when the State for *thirty years has not exercised its*

*right to sell the property for delinquent taxes,* and when the time allowed by law for the State to sue to collect taxes has long since expired, the lien of the tax shall be removed also.

"In some counties private persons have made contracts with the authorities under which they dig up and examine the old tax rolls, and receive fifty per cent of all the old taxes which they may find, and which the present owners are compelled or induced to pay in order to clear their property. It is obviously unfair to permit the State to wait until all the parties are dead and all private records lost, and then endeavor to enforce a' lien for taxes with all the penalties.

"The Constitutional Amendment in no way affects the collection of present taxes. It does not apply to cases in which the State has sold property for non-payment of taxes. It merely gives the legislature power, if it sees fit, to provide by law that if the State or its political subdivisions do not collect taxes or sell property for their non-payment within thirty years after the taxes are levied, the tax shall no longer be a lien upon the property."

That such an argument may be considered in determining the purpose and intent of an act and construing its meaning is sanctioned in *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 Pac. 1060, 17 A. L. R. 72].

The statement to voters just referred to makes it clear that the limitation on taxes applies only when the *state* has not sold the property for delinquent taxes. Here it is stipulated the state had not sold the property in question. After the amendment of section 3716 of the Political Code in 1931 the opinion of the attorney-general was sought as to the meaning of sections 3716 and 3771 of the Political Code. In part he said:

"The words 'or the property *sold* for the payment thereof' and the words 'unless the property subject thereto *has been sold in the manner provided by law for the payment* of said tax' refer, in my opinion, not to the automatic 'Sale to the State' provided for in section 3771, but to a sale by the State pursuant to the provisions of section 3771a, providing for a sale at public auction after the five year period of redemption has elapsed."

This opinion of the attorney-general is supported by an analysis of certain cases, i. e., *Jacoby* v. *Wolff,* 198 Cal. 667 [247 Pac. 195], *Crocker* v. *Scott,* 149 Cal. 575 [87 Pac. 102],

*Fox* v. *Wright,* 152 Cal. 59 [91 Pac. 1005], and *Merchants Trust Co.* v. *Wright,* 161 Cal. 149 [118 Pac. 517].

It might be urged that section 3716 of the Political Code was in effect a cancellation of a tax and therefore a violation of various constitutional provisions regarding the granting of special immunities, lending credit, etc. Again we adopt the reasoning of the attorney-general, who points out that the imposing of penalties for the nonpayment of a tax is a legislative function, it being merely a procedure or remedy for the enforcement of the principal obligation, and although the lien of the tax may be removed the obligation still remains. It is in effect merely a withdrawal of one method of enforcing payment of an obligation that still continues. Undoubtedly the purpose of the act was and is to prevent taxpayers from being harassed by claims of unpaid taxes dating back more than thirty years. The same argument that applies to any statute of limitations applies equally to a taxpayer, as pointed out in the argument submitted to the voters at the 1932 election.

Should the statute be held to apply to property "Sold to the State" by operation of law, the condition sought to be remedied would still exist and the taxpayer would obtain no relief. On the other hand, under the construction given by the trial court the section is effective and no one is injured, and the third person who may have purchased the property sold by the state at auction is fully protected. The words in section 3716 of the Political Code which made the act effective one year from the time the act took effect, were undoubtedly inserted so the state might have an opportunity to elect to exercise its right of sale on such thirty-year delinquencies before being precluded by the statute.

Furthermore, the sale to the state is merely the first step in the making of a sale to the ultimate purchaser. It is not a completed transaction. The purpose of any sale of property on the delinquent list is to restore the property to the channels of trade and eventually to obtain revenue for the support of the government, and not that the state might acquire title to the property. The property is of no value to the state until returned to a tax-paying basis.

In order that there may be a sale under the act referred to, three steps are necessary: First, the levying of a valid tax; second, the entry of the delinquency if the tax is

not paid, and an endorsement by the auditor "Sold to the State", and thirdly, if there is no redemption within five years, then the sale at public auction for the purpose of paying delinquent taxes, costs and penalties. Each and all of these steps are necessary to constitute a sale "in the manner provided by law".

We are of the opinion, therefore, the judgment should be affirmed. It is so ordered.

Thompson, J., and Plummer, J., concurred.